

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MEG:NJM
F. #2018R02298

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 15, 2020

By ECF

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Tehuti Ayeboafo
             Criminal Docket No. 19-337 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in advance of the defendant Tehuti Ayeboafo's sentencing in the above-captioned case, which is scheduled for September 22, 2020, at 9:30 a.m. On March 12, 2020, the defendant pled guilty to the above-captioned indictment (the "Indictment"), charging one count of distribution and possession with intent to distribute 28 grams or more of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii). For the reasons set forth below, the government respectfully requests that the Court impose a sentence towards the high end of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 60 to 71 months' custody.

I.    Background

      The defendant, a member of the violent "Only The Africans" gang, pled guilty to selling an undercover New York City Police Department ("NYPD") officer cocaine base approximately 14 times between November 2018 and March 2019. (Pre-Sentence Investigation Report ("PSR") ¶¶ 3-4). On at least one occasion, the defendant also provided heroin, which contained fentanyl, to the officer. (PSR ¶ 7).

      Prior to his arrest in relation to the charges in this case, the defendant was arrested by the NYPD in possession of a heroin/fentanyl mixture and marijuana. (PSR ¶ 11). Although he was initially charged in Richmond County in connection with this arrest, the conduct is now subsumed into this case.

II. United States Sentencing Guidelines Calculation

The government agrees with the defendant and the Probation Department's calculation of the defendant's Guidelines.") range. (See PSR ¶¶ 15-25). The appropriate Guidelines calculation is set forth below:

| | |
|---|---:|
| Base Offense Level (§ 2D1.1(c)(8)) | 24 |
| Less: Acceptance of Responsibility (§ 3E1.1(a) and (b)) | -3 |
| Total: | 21 |

With a Criminal History Category of IV, this results in a Guidelines range of 57 to 71 months. However, because the mandatory minimum sentence for a violation of 21 U.S.C. § 841(b)(1)(B)(iii) is 60 months, the effective Guidelines range is 60 to 71 months' imprisonment.

III. A Guidelines Sentence Is Appropriate in This Case

The government respectfully submits that a Guidelines sentence is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). Interpreting the Supreme Court's decision in United States v. Booker, the Second Circuit has held that "sentencing judges remain under a duty with respect to the Guidelines . . . to consider them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). "While district courts enjoy discretion following Booker, that discretion must be informed by the § 3553(a) factors[.]" Id. at 132 (internal quotation marks omitted). In this case, the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a Guidelines sentence.

The nature and circumstances of the defendant's crime is easy to understate. The defendant sold over 28 grams of crack cocaine to an undercover officer, in addition to his sale (and subsequent possession) of fentanyl-laced heroin. The distribution of crack cocaine is a serious crime. United States v. Reed, 629 F. App'x 19, 22-23 (2d Cir. 2015) (affirming 110 month sentence for conspiracy to possess with intent to distribute 28 grams or more of cocaine base, in part, because it was a serious offense); Elbert v. United States, 2014 WL 4182400, at *3 (D. Conn. Aug. 21, 2014) ("distribution of street level quantities of crack cocaine is a serious offense because of the destructive consequences such conduct has for those end users who purchase at the street level and for their families and, ineluctably, the community").

As the Court knows, crack cocaine is an extremely dangerous and addictive narcotic, which has had a devastating impact on far too many families, communities and citizens in New York and across the United States. Indeed, it is possible to become addicted to crack cocaine after only one use. American Addiction Centers, What is Crack? Difference Between Crack and Cocaine?, available at https://americanaddictioncenters.org/cocaine-treatment/differences-with-crack. Cocaine has proved a very deadly drug with a mounting death toll. Drug overdose deaths involving cocaine rose from 3,822 in 1999 to 14,666 to 2018.

See National Institute of Drug Abuse, Overdose Death Rates, available at https://www.drugabuse.gov/related-topics/trends-statistics/overdose-death-rates. The defendant was selling cocaine base for profit. There is no doubt that this is serious criminal conduct that could have resulted in the deaths of his customers. United States v. Robinson, 892 F.3d 209, 215 (6th Cir. 2018) (affirming 118-month sentence for possession with intent to distribute narcotics where district court found that "our communities ha[d] been ripped apart by . . . drugs," and that narcotics were "killing people on a regular basis.").

Moreover, the defendant's crack sales were simply 14 more instances of his criminal history, which has been building consistently since his first conviction in 2014. His drug convictions include a 2016 case in which he was seen throwing a bag of marijuana and codeine under a car (PSR ¶ 28), a separate 2016 conviction in which the defendant and his current girlfriend possessed marijuana and cocaine with an intent to sell (PSR ¶ 30), and a 2018 conviction in which the defendant was found to possess cocaine and marijuana hidden between his couch cushions (PSR ¶ 31). In this case, the defendant is being held to account both for a series of crack sales to an undercover officer, and for a subsequent arrest while he was in possession of fentanyl and marijuana.

The defendant's criminal history also includes convictions for attempted criminal possession of a firearm and unauthorized possession of ammunition. (PSR ¶¶ 27, 29).

Brief sentences have thus far not deterred this defendant from his commitment to his gang, or from his gun-crimes and repeated drug crimes. Not every 23-year-old can claim to be in Criminal History Category IV, but this defendant has obtained enough criminal history points with room to spare because he has engaged in a pattern of criminal behavior, including while under court supervision. (PSR ¶¶ 27-33).

Although he is fully capable of being a contributing member of society, the defendant has instead chosen to lead a life of crime. His previous sentences have been insufficient either to deter him from committing crimes or to protect the public from the substantial and risky crimes that the defendant regularly commits when not incarcerated. Cf. 18 U.S.C. §§ 3553(a)(2)(B)-(C). All of these factors weigh in favor of a substantial sentence because they illustrate an ongoing lawlessness and a clear need for individual deterrence.

Finally, the defendant engaged in crimes beyond the minimum. He was initially charged in a complaint with the pattern of drug sales that he made to the undercover NYPD officer; this conduct, absent anything more, would merit a 60-month mandatory minimum sentence. But this defendant did do more, and initially was facing state charges for his arrest, later than his sales to the undercover officers, for possessing different, dangerous drugs. (PSR ¶ 11). Although the defendant will not now have two additional convictions for his unrelated drug crimes, he should nevertheless be held to account for his March 28, 2019 possession with

intent to distribute fentanyl-laced heroin—and thus he should be sentenced above the statutory minimum that would have been applicable irrespective of that conduct.

IV. Conclusion

For the reasons set forth above, the government respectfully requests that the Court sentence the defendant to a term towards the high end of the range of 60 to 71 months' custody.

Respectfully submitted,

SETH D. DUCHARME
Acting United States Attorney

By: /s/
Nicholas Moscow
Assistant U.S. Attorney
(718) 254-6212

cc: Sally Butler, Esq. (by ECF)
Christopher Wright, Esq. (by ECF)
Clerk of Court (BMC) (by ECF)